JENNIE M. HARNEY, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 29, 1899.

Master and Servant: NEGLIGENCE: ASSUMPTION OF RISK: CONTRIBUTORY NEGLIGENCE: EVIDENCE. The evidence in this case is reviewed and held sufficient to send the case to the jury on the questions of the safety of coupling a car without a draw-head and with a mashed bumper and of the servant's knowledge and opportunity to know of such defects, since before the servant can as a matter of law be declared negligent it should clearly and uncontrovertibly appear that no other conclusion was fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it. Instructions on the trial are also held proper.

*Appeal from the Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

WM. S. SHIRK for appellant.

(1.) The judgment should be reversed on account of the error of the court below in refusing to sustain the defendant's demurrer to the plaintiff's evidence. The plaintiff's own evidence showed: First, that the draw-head was broken out of the car while in transit. Second, that it was necessary to take it to a repair station to be repaired, and that this was

done.   Third, that it was necessary to uncouple it from the
car to which it was attached in order to leave it there for
repairs.   Fourth, that the usual and ordinary way of coupling
a car in this condition to another car was by chaining it to such
other car by a chain carried and used for that purpose.   Fifth,
that the fact that the car had the draw-head broken out and was
chained up to the next car to it, was open to the most casual
observation of the plaintiff's husband, that by the mere act
of looking, with the use of his lantern, he could not avoid
seeing that the draw-head was gone and the car chained up.
Sixth, nor could he avoid seeing that the cross-beam was gone,
if it was gone, or that the draft timbers were battered to some
extent.   Seventh, That the plaintiff's husband was of mature
age (thirty-one years) and an experienced brakeman of at
least three years.   Under these facts appearing from the
plaintiff's own evidence, the plaintiff was not entitled to re-
cover and the demurrer should have been sustained.   Epper-
son v. Tel. Co., 50 S. W. Rep. 795; Berning v. Medart, 56 Mo.
App. 443; Watson v. Coal Co., 52 Mo. App. 366; Claybaugh
v. Railway, 56 Mo. App. 630; Moore v. Mill Co., 55 Mo. App.
491; McIntosh v. Railway, 58 Mo. App. 281; Jackson v.
Railway, 104 Mo. 448; Fugler v. Bothe, 43 Mo. App. 44, dis-
senting opinion by Judge Rombauer, beginning on page 62.
This dissenting opinion approved by the supreme court in
Fugler v. Bothe, 117 Mo. 475; Steinhauser v. Spraul, 127 Mo.
541; Marshall v Kansas City, 69 Mo. App. 256; 3 Elliott on
Railroads, sec. 1283, note 1; secs. 1288, 1290, note 4; sec.
1296, and cases cited in note 1, p. 2042; Mahoney v. Railway,
Hun. 638; Gibson v. Railway, 63 N. Y. 449; Railway v. Rog-
ers, 57 Fed. Rep. 378; Davidson v. Railway, 44 Fed. Rep.
476; Railway v. Markes, 41 Ark. 542; DeForest v. Jewett,
19 Hun. 509.   (2)   A servant assumes the risk of extraor-
dinary dangers which are obvious to him and which are vol-
untarily undertaken.   Railway v. Adams, 23 Am. and Eng.
Ry. Cases, 405; 105 Ind. 151; Downey v. Sawyer, 157 Mass.

418; Woods v. Railway, 39 Minn. 435; Smith v. Railway, 42 Minn. 87; Williams v. Railway, 39 Hun. (N. Y.) 430; Cowhill v. Roberts, 71 Hun. 121. Even though he undertakes to perform the hazardous duty because urged to do so by the master. Duhl v. Iron Co., 140 Pa. St. 487; English v. Railway, 24 Fed. Rep. 906. And where he is temporarily engaged in more hazardous work than that for which he was employed, he takes upon himself all such risks incident to the work as are equally open to the observation of himself and the master. Coal Co. v. Haenni, 146 Ill. 614. Even if he did it through fear of being discharged. Leary v. Railway, 139 Mass. 580; Railway v. Moore, 49 Kan. 616. (3) Nor did defendant's evidence in the least aid plaintiff's case. To the contrary, it not only weakened it but entirely destroyed it. Weber v. Railway, 100 Mo. 194, 204, 206. The court below should have given the peremptory instruction asked by defendant at the close of the whole case. (4) It was error to give plaintiff's third instruction. (5) The plaintiff's fourth instruction is bad for the same exact reasons.

ALEXANDER GRAVES and WILLIAM AULL for respondent.

(1) "If inferences other than that of contributory negligence may fairly be drawn from the facts and circumstances shown to exist, then the question becomes one of fact for the jury, and the defense must be clearly made out." Weller v. Railway, 120 Mo. 635. "Negligence is always a question for the jury where the facts being undisputed, different minds might reasonably draw different conclusions from them, and every reasonable intendment in favor of plaintiff must be indulged." Gratiot v. Railway, 116 Mo. 459; Tabler v. Railroad, 93 Mo. 79; Norton v. Ittner, 56 Mo. 351; Huhn v. Railroad, 92 Mo. 440; Mauerman v. Siemerts, 71 Mo. 101; Nagel v. Railroad, 75 Mo. 653; Keim v. Railway, 90 Mo. 314; Roddy

v. Railroad, 104 Mo. 235; Petty v. Railroad, 88 Mo. 306; Buesching v. Gaslight Co., 73 Mo. 219; Reilly v. Railroad, 94 Mo. 609; Thorpe v. Railroad, 89 Mo. 651; Soeder v. Railroad, 100 Mo. 673; O'Mellia v. Railroad, 115 Mo. 205; Blanton v. Dold, 109 Mo. 65; Gutridge v. Railroad, 105 Mo. 521; Alcorn v. Railroad, 108 Mo. 82; Schroeder v. Railroad, 108 Mo. 322; McNown v. Railway, 55 Mo. App. 591. (2) There is not a syllable of evidence tending to show that Harney knew that the dead-wood or cross-beam, draw-bar, carrying iron, dead-wood, iron bolt were gone, and that the draw-bar timbers were broken and shattered; though Smith and Hull (defendant's witnesses) gave evidence tending to show that Harney knew car 39 was chained up to another. But if the undisputed evidence on the part of the defendant had tended to show that he knew of all said defects, still the alleged contributory negligence, was a question for the jury. Smith v. Coal Co., 75 Mo. App. 181, 182. (3) Appellant's third point is that the court did not sustain the demurrer to the evidence at the close of the whole case. The authorities cited in points I and II, *supra,* fully dispose of this point. Flynn v. Railroad, 78 Mo. 195; Weller v. Railroad, 120 Mo. 650; Petty v. Railroad, 88 Mo. 320; Schlereth v. Railroad, 115 Mo. 87; Crumpley v. Railroad, 111 Mo. 158. (4) Appellant in points 4 and 5 of the brief, complains of respondent's instructions numbered 3 and 4. These instructions assert the law correctly. Conroy v. Iron Works, 62 Mo. 35; Stephens v. Railroad, 96 Mo. 207; Huhn v. Railroad, 92 Mo. 440; Thorpe v. Railroad, 89 Mo. 650; Soeder v. Railroad, 100 Mo. 673; Steinhauser v. Spraul, 114 Mo. 551; Shortel v. St. Joseph, 104 Mo. 114; Stoddard v. Railroad, 65 Mo. 515; Devlin v. Railroad, 87 Mo. 545; Larson v. Mining Co., 71 Mo. App. 512; Halliburton v. Railway, 58 Mo. App. 27; Monahan v. Clay & Coal Co., 58 Mo. App. 68; Smith v. Coal Co., 75 Mo. App. 181.

GILL, J.—On the night of January 8, 1897, plaintiff's husband, who was a brakeman in defendant's employ, was

crushed and killed while trying to uncouple a car on a sidetrack at Mirick station near Lexington. The crew was at the time making up a west bound train from a lot of cars loaded with coal. The nature of the complaint is thus disclosed in the petition:

"Plaintiff avers that in the midst of said loaded cars standing upon said sidetrack there was one car numbered thirty-nine (39) coupled to another car which was wholly defective and dangerous in this, to wit: That the draw-head or draw-bar (as it is sometimes called) thereto, which is used for coupling cars together, and was designed to insure the safety of decedent in coupling or uncoupling said cars, was drawn out of one end of said car and in lieu thereof the defendant at that time and place was using an iron chain for the purpose of coupling said car at that end, and that the dead-wood or bumper belonging to said car number thirty-nine (39), used in connection with said draw-head or draw-bar, was wholly defective, shattered and broken and the cross-beam belonging thereto was entirely gone, all of which was intended and designed, in a car properly equipped, as additional protection from danger to one engaged in the act of coupling or uncoupling cars.

STATEMENT.

"Plaintiff avers that the use of said chain in lieu of said draw-head or draw-bar; the defective, shattered and broken condition of said dead-wood and the absence of said cross-beam, made the operation of uncoupling said car, at that time and place, hazardous and dangerous, as the defendant well knew. Plaintiff avers that said decedent, her said husband, had no knowledge whatever at the time of the accident hereinafter set forth, or at any time whatever, of the defective condition of said car, or that said draw-head or draw-bar was gone from car number thirty-nine (39), and that in lieu thereof defendant was using a chain, and that the said dead-wood was in said defective, shattered and broken condition, and that the cross-beam thereto was gone, and that on the evening of the 8th day

of January aforesaid, the conductor in charge of said train and the crew thereof, including the decedent, ordered said decedent to uncouple said car from the others and to set the same out of said train. Plaintiff avers that the said conductor was a superior officer appointed by the defendant, and that by the rules and regulations of said defendant, said decedent was compelled and bound to obey said order of said conductor in the premises, it being within the authority of said conductor to make such order to decedent.

"Plaintiff avers that the said decedent was a careful, prudent, cautious and reliable man in the discharge of his railroad duties as such brakeman and that in a careful, prudent and cautious manner he attempted to obey said order to uncouple said car and to set the same out of the train, but as decedent was in the act of uncoupling said car, the locomotive attached to said train of cars, so standing upon said track was suddenly set in motion, drawing said cars, including said car number thirty-nine (39) forward, and the same was as suddenly stopped whereby the said car number thirty-nine (39), for the lack of said draw-head or cross-bar, and because of said broken, defective and shattered dead-wood, and the loss of said cross-beam belonging thereto, crashed against the car, to which the said defective car was attached and between the said cars the decedent's head was crushed, the occipital bone, near the temple being crushed in and his breast bone broken and the said decedent was then and thereby so injured that death was instantaneous. Plaintiff avers that said injury and death were caused solely and entirely by defendant's negligence in not providing proper, safe and sound instrumentalities as herein aforesaid for decedent to perform the act of uncoupling said car number thirty-nine (39) and that said decedent in no way contributed thereto by any negligence."

The answer, in addition to a general denial, charged contributory negligence, that the deceased brakeman well knew of the defective condition of the car and the absence of the

draw-head, etc., that he was advised thereof and warned to be careful in using the same, that said defects were open and obvious, and that said deceased therefore assumed the risk. There was a verdict and judgment for plaintiff in the sum of $2,500 and defendant appealed.

The main ground relied upon for reversal, is that a demurrer to the evidence should have been sustained. After a very careful consideration of the entire evidence in the light of the law applicable thereto, we have concluded the point not well taken. The jury was entirely justified in finding that defendant was negligent in the matter of furnishing reasonably safe coupling appliances to car number 39. The allegations of the petition in that respect were amply supported by the evidence. It was proved that this car loaded with coal, was taken up on the day in question at Rocky Branch Switch near Higginsville; that it was then in a very imperfect condition, having lost one of its draw-heads, and in order to haul the car it had to be chained to another. It was there loaded with coal and billed to Beloit, Kansas. When said car reached Mirick station, on its way to Beloit, it was placed with other cars loaded with coal on a side track to be taken up and forwarded to its destination by a train to be made up at that point, and connected with which train the deceased worked as a brakeman. The evidence also tended to prove that when the car arrived at Mirick in addition to the loss of the draw-head, or draw-bar, so necessary for safe coupling, the end of the car had become so battered and broken that the deadwood, bumpers and cross-beam used to keep the cars apart, had become lost or so disabled as to be worthless for the purposes intended. It seems that even in the absence of the draw-bar, these dead-wood, bumpers, etc., if in place and proper condition, would have been sufficient to hold the cars apart so as to allow the brakeman to enter between the cars and disconnect them as Harney was attempting at the time he was killed.

*MASTER and servant: negligence: assumption of risk: contributory negligence: evidence.*

With these out, however, the cars would come so close together as to crush a man between them; there would in fact then be no space left between the ends of the cars. That this was the condition of car 39 when Harney went in to make the coupling, is not only shown by the testimony of parties who examined the car next morning, but is also proved by the fact that Harney's head was crushed by the coming together of the ends of the two cars. For if the ordinary bumpers or dead-wood had been in place the cars could not have approached each other nearer than eight to twelve inches, which was more than sufficient space for the head of the deceased.

The continued use of the car in its defective and dangerous condition was a clear violation of that duty resting on the master to provide reasonably safe appliances for the servant.

But defendant rests its defense mainly on certain evidence adduced at the trial which tended to prove that Harney had full knowledge of the absence of the draw-head—that he was, a short time before attempting the coupling, informed that the car had no draw-head, that he and an associate brakeman were advised by the conductor of the intention to take the car out of the train and leave it at Mirick for repair, and that they were warned to be careful in the uncoupling. In view of this evidence and of the further fact that the defective condition of the car was of such an obvious character, and the danger of its use so patent it is contended that the deceased brakeman asumed the risk incident to the use of the car; or, to put it in another way, that the brakeman having such knowledge, or means of knowledge, was guilty of contributory negligence in entering between the cars to uncouple the same while in motion.

In answer to this contention it is sufficient first to say that neither the court below nor this court was or is authorized to concede the truth of the statement of the two witnesses who testified that the dead brakeman was told of the condition of

the car, that was a matter to be left to the jury. Nor was it proper to assume that the defect was of such an open and obvious character that the brakeman, in the exercise of ordinary care, ought to have discovered it before he went in to do the coupling. This, too, was a matter to be settled by the triers of the fact. According to the evidence, the night was dark, and though the deceased carried a lantern it is not at all clear that by the exercise of reasonable care and caution he could have discovered the absence of the draw-bar before going between the cars.

But however this may be, there is no pretense that Harney was informed or that he knew that the dead-wood, bumpers or cross-beam were shattered, broken away and destroyed; so that, though he knew of the loss of the draw-bar, and that the cars were chained together, yet he may have thought it reasonably safe to go in between the cars to perform his duty, since said timbers would hold the cars sufficiently apart to insure his safety. And from the evidence it seems, that the absence of these bumpers or dead-wood would hardly be noticed by a mere casual or ordinary observer. Witnesses who looked at the car the night of the accident failed to see these defects, but they were readily discovered by daylight the next morning.

It is useless to go over the numerous decisions cited and review the language of different judges and courts in cases of this nature. The respective duties of master and servant are well settled. It is incumbent on the former to exercise ordinary diligence in providing the servant with reasonably safe appliances so as not to expose him to unnecessary danger; and on the other hand it is incumbent on the servant, while obeying the orders of his employer, to exercise reasonable care for his own protection and not heedlessly expose himself to obvious perils. And if then the deceased brakeman knew, or by the exercise of ordinary care might have known, that the car in question was so defective that it was not reasonably safe

to enter where he did and perform the work, it was his duty to desist, otherwise he or those representing him could not complain of injuries thus needlessly received. He would in that event be chargeable with negligence directly contributing to the injury and no action would lie against the master. But in order to justify the court in declaring, as matter of law, that the injured party was himself negligent, it should clearly and incontrovertibly appear that no other conclusion was fairly deducible from the evidence, giving him the benefit of every reasonable inference that may be drawn from it. We are not prepared to declare that the facts and circumstances attending Harney's death thus established this clear case of contributory negligence, and the court correctly declined to give the peremptory instruction asked by defendant.

As to the court's action in giving and refusing instructions defendant surely has no cause to complain. These declarations of the law were very clear and comprehensive and gave to the defendant the benefit of every theory of defense to which it was entitled. Plaintiff's third and fourth instructions, in effect declaring that even though Harney knew of the defective condition of the car, yet he was justified in going in to uncouple the same under the conductor's order unless the danger was so glaring that no prudent person would have attempted to uncouple the same under the conditions then existing, were properly given. The propriety of these instructions is fully sustained by the authorities cited in plaintiff's brief. These cases too fully justified the court's action in refusing defendant's eighth and ninth instructions.

The case was fairly tried and the judgment must be affirmed. All concur.